CLERK'S COPY

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

FILED
UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

99 JUN 28 PM 1:48

CLERK-SANTA FE

CINDY GUTIERREZ-BARRAZA,

Plaintiff,

vs.            No. Civ. 98-1001 SC/WWD

HELWEG & FARMER TRANSPORTATION
COMPANY, INC.,

Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendant's Motion for Summary Judgment, filed June 9, 1998 [Doc. No. 30]. The Court, having read the motion, memoranda, and exhibits submitted by the parties, and being apprised of the applicable law, finds that the motion is well taken. The motion will be granted for the reasons set forth below.

## I. BACKGROUND

Plaintiff alleges that while an employee or prospective employee of Defendant, her actual or apparent immediate supervisor, George Garcia, sexually harassed her, creating a hostile work environment, in violation of Title VII. Plaintiff further alleges she was constructively discharged from her employment or prospective employment with Defendant, in violation of Title VII.

Defendant is a company that provides school bus transportation services for the Las Cruces, New Mexico public school system. Defendant offers a training program for individuals who wish to learn how to learn to operate a school bus or obtain a Commercial Driver's License (CDL) for operating commercial vehicles other than 18-wheel trucks. Through Defendant's program, individuals receive training, certification, and licensing to operate a school bus in New Mexico. Individuals receive compensation for their time spent in training only if they complete Defendant's training program, are licensed and receive their CDL, pass drug and physical tests, and are employed by Defendant, with payment made at the time of the individual's first payroll.

On or about January 3, 1997, Plaintiff inquired about employment opportunities as a school bus driver with Defendant. Defendant's General Manager at the time, Lynn Degenhart (Degenhart), informed Plaintiff that she needed to complete a school bus training program and obtain a CDL to be qualified and considered for employment with Defendant as a school bus driver. Plaintiff did not have a CDL at the time of her employment inquiry and has not since obtained such a license. On January 13, 1997, Plaintiff signed a Training Candidate Agreement, which provided that Plaintiff understood she was a trainee in Defendant's program, and not an employee of the company; that there was no guarantee of employment with the company; and that she would receive compensation for her time spent in the training program only if she completed the training program, met certification requirements, and was employed by

2

Defendant. It is disputed by the parties whether Plaintiff interviewed for a job with Defendant on January 13, and was guaranteed a job subject to her completion of Defendant's training program and satisfaction of its other employment requirements.

On January 16, 1997, Plaintiff began Defendant's school bus driver training program. On this same date, she signed a W-4 form of the Internal Revenue Service, a Form I-9 of the Immigration and Naturalization Service, and an "Employment Acknowledgment " form regarding Defendant's drug policy. Plaintiff also was given and signed for an Employee Handbook and Driver Education materials.

George Garcia (Garcia) was the instructor responsible for training the class attended by Plaintiff, including deciding the place and time of the class, what would be taught, and how and what to study. Garcia did not test trainees to determine whether they met licensing requirements and played no role in Defendant's decision whether to hire trainees. At one point, in response to Plaintiff's query whether she could drive a route for special education children, Garcia informed Plaintiff that she would begin driving a regular route.

The training class was initially comprised of four women: Plaintiff, Yvonne Santistevan, Virginia (last name unknown), and Emma Martinez (Martinez). At the commencement of the training class on January 16, Garcia introduced himself to the class and requested Virginia to stand up. Garcia then stated that during the training program "I'll be doing these things . . . to see if you're nervous." Pl. Dep. at 114.

3

Garcia proceeded to put his hand on Virginia's shoulder and on the back of her neck, and looked into her eyes. Plaintiff alleges that after Garcia touched the nape of Virginia's neck he stroked downward to the bottom of her back. No member of the class, including Plaintiff, objected to being touched during the training program by Garcia in the manner he demonstrated.

After the initial classroom instruction, the class moved to Defendant's school bus parking lot to discuss the parts of a school bus. While the class and Garcia were standing by a bus, a female bus driver walked by them. Garcia and the driver engaged in small talk, before the driver proceeded to her car. As the driver walked off, Garcia arched his back, squinted his eyes, tilted his head, and stared at the back of the driver. According to Plaintiff, Garcia was leering at the buttocks of the driver.

After learning the parts of a school bus, the class and Garcia boarded a school bus. The class sat in passenger seats and Garcia explained how to operate an airbrake. As part of his explanation, Garcia took each trainee's hand and, beginning with a loose grip, gradually tightened his grip, squeezing, and then releasing the hand to show the pressure to be applied to an airbrake. (Plaintiff both accepts this last statement of fact, see Pl. Resp. at 1, ¶ A; Def. Mot. at 5, ¶ 25, and disagrees with it, see Pl. Resp. at 4, ¶ T (citing Pl. Aff. at 4, ¶ 16) (such touching was done "ostensibly" as demonstration technique and was done "slowly" and "suggestively")). Garcia had used this hand squeezing technique with both male and female trainees prior to this training class.

Garcia's grip on Plaintiff's hand was as if they were shaking hands. After the airbrake instruction, Garcia moved on to other aspects of school bus operation.

On January 17, 1997, the second training program day, only two of the four trainees returned – Plaintiff and Martinez. The training on this day began in the bus parking lot, with Garcia lecturing on the different non-engine parts of a school bus and how to conduct a pre-trip inspection. Garcia then drove the class in a school bus to a public park, where he continued lecturing. While at the park, Garcia started to touch the back of Plaintiff's neck, startling Plaintiff and resulting in less than one second of contact. Plaintiff asked Garcia what he was doing and Garcia responded, "You're nervous." Pl. Dep. at 175. Plaintiff responded she was not nervous but frustrated because Garcia talked so much. Plaintiff further alleges that she responded in such a manner in hopes Garcia would not touch her again and that she had an immediate need to urinate, a need which she communicated to Garcia. See Pl. Resp. at 4, ¶¶ W, X (citing Pl. Dep. at 174-76).

After Garcia touched Plantiff, the class left the park. Garcia had Martinez drive the school bus first and then Plaintiff. Plaintiff drove the bus back to Defendant's parking lot. At the parking lot, Garcia reached over Plaintiff, as she sat in the driver's seat, to grab materials that were on the other side of Plaintiff. Garcia's torso pressed against Plaintiff's chest. Plaintiff attempted to push Garcia off her and told him to "stop." Garcia laughed and again leaned over Plaintiff, pressing against her, stating he

5

was getting his gloves. Garcia reached over and pressed against Plaintiff a third time to get his pencils and other materials. When Plaintiff asked him why he could not have grabbed all of his possessions at one time, Garcia responded "It's no fun that way." Garcia then stopped pressing against Plaintiff, she got up from the driver's seat, and they exited the bus. Plaintiff further alleges that Garcia came into contact with her breasts, that at one point he was positioned over her in such a fashion that she would have to touch his genitals in order to get him off of her, and that at one point he exerted enough force on her bladder to cause her to urinate in her pants.[1] After exiting the bus, Plaintiff went to the training room, provided a urine sample for a drug test, and went home.

On January 21, 1997, Plaintiff met with Degenhart. Plaintiff complained to Degenhart that on January 16 Garcia had touched Virginia and had held the trainees' hands to teach them how to apply an airbrake, and that on January 17, Garcia had pressed against her repeatedly while she was seated in the driver's seat of a bus. Plaintiff also gave Degenhart a written statement detailing her complaints about Garcia.

On January 21, 1997, Degenhart met with Garcia about Plaintiff's complaints, provided Garcia with a copy of Plaintiff's statement, and asked Garcia to respond in writing to each of her allegations. On January 21, Degenhart interviewed Martinez

---

[1] Garcia vehemently denies pressing against Plaintiff and Defendant accepts as true Plaintiff's version of the events only for purposes of its summary judgment motion.

and Defendant's three Safety Managers, Mona Pomphrey, Bob Trippeer, and Rebecca De La O. The Safety Mangers supervised Garcia and the training program. Each of the three Safety Managers informed Degenhart that no one had ever complained that Garcia had touched them in an offensive or inappropriate manner. Martinez was the only witness to Plaintiff's allegations regarding Garcia's conduct on January 17. Martinez confirmed that on January 16 Garcia had touched Virginia and had squeezed their hands in teaching them about air brakes. Martinez also informed Degenhart that on January 17 Garcia had leaned over Plaintiff as she sat in the driver's seat of a bus, but she had not seen him rub against Plaintiff.

On January 22, 1997, Garcia gave Degenhart his written response to Plaintiff's allegations, denying he had touched Plaintiff in an inappropriate manner. The next day, January 23, Degenhart met with Garcia and instructed Garcia not to use his hands anymore, not to touch trainees in any fashion in the future, and to change the training program so that he would not touch trainees. Although still believing in the instructional value of hand squeezing to demonstrate how to apply an air brake, see Garcia Dep. at 27, Garcia agreed to abide by Degenhart's order.

Within the next week, Degenhart twice telephoned Plaintiff. He informed her that he had spoken with Garcia about her complaints, that a new training class was commencing and she was welcome to resume her training, and that Garcia had been instructed not to treat her any differently than other trainees. Plaintiff responded that

7

she was not going to resume the training. Plaintiff alleges that she wanted to resume her training, and would have done so had there been a new instructor, but was afraid to return to a class in which Garcia remained as the instructor. Plaintiff also alleges that Degenhart told her he did not believe her allegations were true.

The parties do not dispute that at the time of the incidents Plaintiff complains of, Garcia had been employed with Defendant for more than eight years, that there had been no complaints that Garcia engaged in any inappropriate conduct prior to Plaintiff's complaint, and that there have been no complaints about Garcia since Plaintiff's complaint. The parties also agree that Garcia did not use profanity, never told crude or vulgar jokes or engaged in "filthy" talk, never made sexually suggestive comments or used sexual innuendo, never commented about any woman's anatomy, never propositioned Plaintiff or any other woman for sex, and did not touch any of Plaintiff's private areas.

## II. LEGAL STANDARD

A motion for summary judgment should be granted only when there is no genuine issue of material fact and, as a matter of law, the moving party is entitled to judgment. See Fed. R. Civ. P. 56(c). A court's job in ruling on a motion for summary judgment is not to weigh the evidence, make credibility determinations, or draw inferences from the facts, but rather to determine whether there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 255 (1986). The

inquiry a court must make is "whether the evidence presents a sufficient disagreement to require submission to a [fact finder] or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52. If a court finds that there are genuine and material factual issues, these issues should be resolved by the fact finder, and summary judgment is precluded. See id. at 248.

When ruling on a motion for summary judgment, a court must construe the facts in the light most favorable to the nonmovant. See Magnum Foods, Inc. v. Continental Casualty Co., 36 F.3d 1491, 1497 (10th Cir. 1994). All doubts must be resolved in favor of the existence of triable issues. See World of Sleep, Inc. v. La-Z-Boy Chair Co., 756 F.2d 1467, 1474 (10th Cir. 1985). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Only then does the burden shift to the nonmovant to come forward with evidence showing that there is a genuine issue of material fact. See Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991).

## III. DISCUSSION

### A. Title VII - Hostile Work Environment

Plaintiff contends that, pursuant to Title VII, Defendant is vicariously liable for the hostile work environment created by its employee, Garcia.[2] Defendant moves for

---

[2] An employer is directly liable for sexual harassment if it was negligent, i.e., if it knew or should have known about the actionable conduct and failed to stop it. See Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, __, 118 S.Ct. 2257, 2267 (1998); Baty v. Willamette Indus., Inc., 172 F.3d

9

summary judgment on this claim. Defendant raises five separate grounds for granting summary judgment as to Plaintiff's hostile workplace claim: (1) it was not an employer of Plaintiff and Plaintiff was not its employee, as those terms are used under Title VII; (2) Garcia was not Plaintiff's supervisor; (3) the alleged harassment was not sufficiently severe or pervasive to alter the terms and conditions of the training program; (4) it took appropriate action to remedy her complaint; and (5) a reasonable person would have taken advantage of the correction action and returned to the training program.

An employer is vicariously liable under Title VII for an actionable hostile work environment if such environment was created by a supervisor with authority over the plaintiff employee. See Faragher v. City of Boca Raton, 524 U.S. 775, 118 S.Ct. 2275, 2292-93 (1998); Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, ___, 118 S.Ct. 2257, 2270 (1998); Baty v. Willamette Indus., Inc., 172 F.3d 1232, 1242 (10th Cir. 1999). When no tangible employment action is taken, however, the defendant employer may protect itself from vicarious liability or damages if it satisfies a two-pronged affirmative defense – (1) "that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior," and (2) "that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer. . . ." Burlington, 524 U.S. at ___, 118 S.Ct.

---

1232, 1241-42 (10th Cir. 1999). A negligence theory of liability is not at issue in this case.

at 2270; see Faragher, 524 U.S. at ___, 118 S.Ct. at 2293; Baty, 172 F.3d at 1242.³ A defendant must establish its entitlement to the affirmative defense by a preponderance of the evidence. See Burlington, 524 U.S. at ___, 118 S.Ct. at 2270 (citing Fed. R. Civ. P. 8(c)).

I need not decide the issues of whether Plaintiff was an "employee" of Defendant as that term is defined in Title VII jurisprudence; whether Garcia was Plaintiff's "supervisor," as that term is defined in Title VII jurisprudence; or whether the alleged harassment was of a sufficient degree to be actionable under Title VII. Even assuming that the above elements have been satisfied, summary judgment is warranted in this case because Defendant has sufficiently established entitlement to the Burlington-Faragher affirmative defense. The facts, viewed in the light most favorable to Plaintiff, establish, as a matter of law, that Defendant promptly corrected any sexually harassing behavior and that Plaintiff unreasonably failed to take advantage of the corrective opportunities provided by Defendant.

The first prong of the Burlington-Faragher affirmative defense requires Defendant to prove that it exercised reasonable care to respond to the sexual harassment.⁴ Plaintiff contends that Defendant's response was inadequate and

---

³ In Baty, the Tenth Circuit discussed only the first prong of the Burlington-Faragher affirmative defense, with no mention of the second prong. See Baty, 172 F.3d at 1242-43.

⁴ The issue of whether Defendant exercised reasonable care to prevent sexually harassing behavior has not been raised by the parties. From the uncontested facts, it appears that Defendant acted reasonably to prevent sexually harassing conduct in this case – Plaintiff had no difficulty

11

unreasonable because it did not discipline Garcia. Although whether a defendant employer took disciplinary action against the offending employee is relevant to evaluating the adequacy of the defendant employer's response, such disciplinary action is not always required. See Baty, 172 F.3d at 1242-43; see also Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 676 (10th Cir. 1998) (detailing examples of reasonable responses). "'[A]n employer, in order to avoid liability for the discriminatory conduct of an employee, does not have to necessarily discipline or terminate the offending employee as long as the employer takes corrective action reasonably likely to prevent the offending conduct from reoccurring.'" Baty, 172 F.3d at 1243 (alteration in Baty) (quoting Harris v. L & L Wings, Inc., 132 F.3d 978, 984 (4th Cir. 1997) (quoting Knabe v. Boury Corp., 114 F.3d 407, 414 (3d. Cir. 1997) (internal quotations omitted)). "A stoppage of harassment shows effectiveness, which in turn evidences" reasonableness in response. Adler, 144 F.3d at 676. Moreover, even initially ineffective responses may be adequate if they were reasonable under the circumstances. See Turner v. Reynolds Ford, Inc., No. 97-6152, 145 F.3d 1346, 1998 WL 234540 at *5 (10th Cir. May 11, 1998) (unpublished disposition) (citing and quoting with approval, Knabe, 114 F.3d at 412, and McKenzie v. Illinois Dep't of Trans., 92 F.3d 473, 480 (7th Cir. 1996)); see also Shaw v. Autozone, Inc., No. 97-3654, ___ F.3d

---

reporting the alleged harassment and there had been no previous complaints against Garcia prior to Plaintiff's complaint.

___, ___, 1999 WL 371668 at *4 (7th Cir. June 8, 1999) (publication pending) ("[T]he law does not require success – it only requires that an employer act reasonably to prevent sexual harassment."); Parkins v. Civil Constructors of Ill., Inc., 163 F.3d 1027, 1036 (7th Cir. 1998) ("[T]he law does not even require that the employer's actions prevent harassment, but merely that its response was reasonably likely to prevent future harassment.").

The uncontested evidence in this case supports the conclusion that Defendant not only promptly took steps to end any sexual harassment by Garcia, but that the steps it took were effective to end the alleged harassment. See Baty, 172 F.3d at 1242 (citing Adler, 144 F.3d 664). First, Defendant's response was prompt. It is undisputed that within two days of receiving Plaintiff's written statement, Degenhart had requested and received Garcia's written response to the statement; had interviewed Garcia's supervisors, who also supervised the training program; had interviewed a witness to the January 16 incidents and the only witness to the January 17 incident; and had instructed Garcia to stop any and all touching of trainees and to change the training program.

Defendant's response was reasonable under the totality of the circumstances – the absence of any previous complaint against Garcia in his eight and one-half years of employment with Defendant, the information provided by the Safety Managers and by Martinez, the nature of the alleged harassing conduct, and Garcia's written response. Furthermore, Defendant's response was effective, furthering evidencing

13

reasonableness. There have been no complaints against Garcia since Plaintiff's complaint in January 1997. Therefore, Defendant has presented sufficient undisputed evidence establishing that it acted reasonably and promptly to respond to and remedy the sexual harassment alleged by Plaintiff.

To succeed on the Burlington-Faragher affirmative defense, Defendant must establish also that Plaintiff "unreasonably failed to take advantage of any preventive or corrective opportunities" it provided. Faragher, 524 U.S. at ___, 118 S.Ct. at 2293; Burlington, 524 U.S. at ___, 118 S.Ct. at 2270. The undisputed facts establish that (1) Defendant promptly investigated Plaintiff's complaints about Garcia, instructed Garcia to stop any and all of his touching in the training program, and Garcia agreed to abide by these instructions; and (2) Degenhart informed Plaintiff that he had spoken with Garcia, invited her to resume her training, and informed her that Garcia would not treat her differently than other trainees. Plaintiff told Degenhart she was not going to resume the training and that if she were to resume the training there would have to be a trainer other than Garcia.

While Plaintiff's reluctance to return to the training program when informed Garcia would continue to be the instructor is understandable, her refusal to do so was unreasonable as a matter of law for three reasons. See Adler, 144 F.3d at 678. First, this is not a repeat conduct case where the employer's first response was ineffective. Although scheduling changes and transfers may be appropriate or even required in a

14

repeat conduct situation, such changes are not required when the employer's first response calculated to end the harassment has been effective. See id. at 676. Second, although Plaintiff did not resume the training, "there was no evidence to support an inference that she would have suffered further harassment by [Garcia] had she [returned]." Id. at 678 (citing Knabe, 114 F.3d at 413-15). Third, even if the alleged harassment had continued after Plaintiff had returned, this renewed harassment would have been insufficient to strip Defendant's first response of reasonableness. An employer's response should be progressive, with alleged harassers given an opportunity to show they have changed and have learned that their previous alleged behavior was wrong, even though this may put the victim at risk of more harassment. As the Tenth Circuit has explained:

> Unfortunately, some harassers may simply never change. Just as unfortunate, a victim may have to suffer repeated harassment while an employer progressively disciplines the perpetrator to determine whether he or she is just such a "hard head" case. It is some consolation for the victim that, to be reasonable, responses must progress more rapidly in proportion to more serious and frequent [or persistent] harassment. The courts, however, must balance the victim's rights, the employer's rights, and the alleged harasser's rights.

Id. at 676-77; see Faragher, 524 U.S. at ___, 118 S.Ct. at 2292 (credit must be given "to employers who make reasonable efforts to discharge their duty").

15

Defendant's response ended any hostile work environment allegedly caused by Garcia, and it was up to Plaintiff to take advantage of the safeguards Defendant had established. If further harassment had occurred when Plaintiff resumed the training under Garcia's tutelage, she could have renewed her complaints to Defendant or its agents, and this would be a different case. Defendant has shown by a preponderance of the evidence that it is entitled to the <u>Burlington-Faragher</u> affirmative defense. Therefore, summary judgment as to Plaintiff's hostile work environment claim is granted.

**B.     Title VII - Constructive Discharge**

Plaintiff alleges she was constructively discharged from Defendant's training program. Defendant contends that: (1) Plaintiff was not an employee of Defendant and, thus, could not have been constructively discharged under Title VII; (2) Plaintiff's inability to maintain her underlying cause of sexual harassment is fatal to her constructive discharge claim; and (3) a reasonable person would not have felt compelled to quit the training program under the circumstances.

Assuming again that Plaintiff was an employee of Defendant, for Plaintiff to allege sufficiently a constructive discharge claim under Title VII, she must establish that "'the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign.'" <u>Sanchez v. Denver Pub. Sch</u>, 164 F.3d 527, 534 (10th Cir. 1998) (quoting

16

Derr v. Gulf Oil Corp., 796 F.2d 340, 344 (10th Cir. 1986)). Having concluded that Defendant did not illegally sexually discriminate against Plaintiff and that a reasonable person would have resumed the training program once Defendant corrected the allegedly hostile work environment, I must conclude that summary judgment should be granted on Plaintiff's constructive discharge claim.

**NOW, THEREFORE, IT IS ORDERED** that Defendant's Motion for Summary Judgment, filed June 9, 1998 [Doc. No. 30], is GRANTED.

_____
SENIOR UNITED STATES DISTRICT JUDGE

Past Counsel for Plaintiff: Eric Sirotkin, LEGAL COUNSELING SERVICE, Albuquerque, New Mexico

Present Counsel for Plaintiff: Kent Winchester, Albuquerque, New Mexico

Counsel for Defendants: Michael L. Blumenthal, SHOOK, HARDY & BACON, L.L.P., Kansas City, Missouri, and Charles J. Vigil, RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A., Albuquerque, New Mexico